**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


**EVELYN VILLARINI SANTIAGO**,

        Plaintiff,

        v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

        Defendant.

**07cv1735
ELECTRONICALLY FILED**


## <u>MEMORANDUM OPINION</u>

**June 25, 2008**

### I.      Introduction

Plaintiff, Evelyn Villarini Santiago (hereinafter "Plaintiff"), brings this action pursuant to

42 U.S.C. § 405(g) and 1383(c)(3) of the Social Security Act ("Act"), seeking review of the final

determination of the Commissioner of Social Security (hereinafter "Commissioner") denying her

application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

Consistent with the customary practice in the Western District of Pennsylvania, the parties have

submitted cross-motions for summary judgment on the record developed at the administrative

proceedings.

After careful consideration of the Administrative Law Judge's (hereinafter "ALJ")

decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision

is supported by substantial evidence, and therefore will grant the Commissioner's motion for

summary judgment, deny Plaintiff's motion for summary judgment, and enter judgment in favor

of the Commissioner.

## II.     Procedural History

On August 12, 2006, Plaintiff applied for DIB and SSI, alleging disability beginning on July 20, 2005.  On March 1, 2006, Plaintiff filed a timely request for a hearing after her initial claim was denied.  The hearing was held before ALJ Patricia C. Henry on October 24, 2006, at which Plaintiff, represented by an attorney, testified, as did a vocational expert.

On December 22, 2006, the ALJ denied Plaintiff's claim, finding that Plaintiff is not disabled and is able to do light work with additional limitations.  The ALJ also found that Plaintiff is limited to simple, routine, repetitive tasks performed in a slow-paced environment, simple, work-related decisions, occasional postural maneuvers as in balancing, stooping, crouching, climbing, kneeling, and crawling, and the occasional interaction with supervisors, co-workers, and the general public.

On November 23, 2007, the Appeals Council affirmed the ALJ's decision, thus becoming the final decision of the Commissioner.  Plaintiff then filed her complaint herein seeking judicial review of the Commissioner's final decision.

## III.     Statement of the Case

The ALJ found that the record supports the finding of severe impairments which consisted of Hepatitis C, mild cervical degenerative disc disease, and residuals from knee surgery and depression.  Tr. 21.[1]  The ALJ discussed portions of Plaintiff's testimony where she stated that she suffered from other impairments including reduced finger flexion, status post palm surgery, arm and back pain.  *Id.*  Plaintiff stated that she no longer had 24% of her ability to flex

---

[1]Tr. refers to the administrative transcript.

her index finger due to a knife cut, she had reduced grip strength as a result of palm surgery, and

that she suffered from right-hand pain and left arm pain due to a stabbing incident fifteen years

earlier. *Id.* These portions of her testimony were discounted as they were not supported by the

evidence on record and Plaintiff continued to work after these incidents. Thus, the ALJ found

that these discounted impairments had a *de minimis* effect on Plaintiff's ability to perform basic

work activities and engage in substantial gainful activity on a sustained basis. *Id.*

The ALJ made the following specific findings:

1.    Plaintiff is forty-seven years old, thus qualifying as a "younger" individual.

2.    Plaintiff has a high school education through a graduate equivalency diploma.

3.    Plaintiff has not engaged in substantial gainful activity since July 20, 2005.

4.    Plaintiff met the disability insured status requirements of the Social Security Act through at least December 31, 2010.

5.    The medical evidence shows that Plaintiff has Hepatitis C, residuals from right knee arthroscopy, cervical degenerative disc disease, and depression. While these impairments are severe, they do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

6.    The medical evidence also establishes that Plaintiff has a remote history of drug and alcohol abuse in addition to status post palm surgery and reduced index finger flexion. These impairments are non-severe and only have a *de minimis* effect on Plaintiff's ability to perform substantial gainful activity.

7.    Plaintiff has an unskilled work background and is unable to perform her past relevant work as a cashier, dishwasher, preparation cook, and housekeeper.

8.    Plaintiff's statements about her impairments and their impact on her ability to work are not entirely credible.

9.    Plaintiff has the residual functional capacity to engage in light work with additional limitations. She is limited to the occasional postural movements (like balancing, kneeling, crawling, stooping, crouching, and climbing), simple, routine, and repetitive tasks performed in slow-paced production environment,

involving only simple, work-related decisions and relatively few changes. She can only have limited to occasional interaction with supervisors, co-workers, and the general public.

Tr. 19-26.

## IV. Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3). Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. See *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson, 402 U.S. at 401 (citation omitted). See *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. See *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based.' *Id.* at 87; parallel and other citations omitted").

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him or her from engaging in

any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d

775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the

claimant must show "he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). See *Sullivan*, 493 U.S. at 525. The

Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir.1999):

In step one, the Commissioner must determine whether the claimant is currently engaging
in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in
substantial activity, the disability claim will be denied. . . . In step two, the Commissioner must
determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c).
If the claimant fails to show that her impairments are "severe," she is ineligible for disability
benefits.

In step three, the Commissioner compares the medical evidence of the claimant's
impairment to a list of impairments presumed severe enough to preclude any gainful work. 20
C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the
analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the

6

claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final step [five]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . . Plummer, 186 F.3d at 428 (italics supplied; certain citations omitted). See also Rutherford, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).

If the claimant satisfies step three, she is considered per se disabled. If the claimant instead satisfies step four, the burden then shifts to the Commissioner at step five to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is equivalent to a Listed Impairment. See *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy. . . ." *Campbell*, 461 U.S. at 461

(citing 42 U.S.C. § 423 (d)(2)(A)).  In order to prove disability under this second method,

plaintiff must first demonstrate the existence of a medically determinable disability that

precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard*, 841 F.2d at

59;  *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her

previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given

plaintiff's mental or physical limitations, age, education and work experience, he or she is able to

perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461

U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step five is frequently based in large measure on testimony provided by the

vocational expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218

(3d Cir. 1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth

all of a claimant's significant impairments and restrictions in activities, physical and mental, as

found by the ALJ or as  uncontradicted on the medical record, the expert's response as to the

existence of jobs in the national economy which the claimant is capable of performing may be

considered substantial evidence in support of the ALJ's findings on claimant's RFC. See, e.g.,

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), citing *Podedworny*, 745 F.2d at 218 and

*Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical

questions to VEs).  See also *Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself."  *Rutherford*, 399 F.3d at 554, n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *Id*. at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not necessarily require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment.  *Burnett*, 220 F.3d at 122

("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'") (citing 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. §§ 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is equivalent to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and specifically explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, citing *Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he or she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. See *Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. See *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. E.g., *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, relying on *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), relying on *Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged

symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. See 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. See *Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at 1070-71 (emphasis added), quoted in *Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has

submitted sufficient evidence to support his or her claim of disability, the Appeals Council may

not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must

present evidence to refute the claim. See *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981)

(where claimant's testimony is reasonably supported by medical evidence, the finder of fact may

not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d

1178, 1184-85 (3d Cir. 1992) (emphasis added), cert. denied 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence,

both medical and non-medical, that support a claimant's subjective testimony about symptoms

and the ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112,

119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical

records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports. . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based

upon a review of the medical record "are highly qualified physicians and psychologists who are

also experts in Social Security disability evaluation. Therefore, administrative law judges must

consider findings of State agency medical and psychological consultants or other program

physicians or psychologists as opinion evidence, except for the ultimate determination about

whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II

and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

## V.  Discussion

The gravamen of Plaintiff's argument is that the ALJ's decision is not supported by substantial evidence.  Plaintiff asserts that (a) the ALJ did not properly implement steps two and (b) three of the five-step process, (c) erred in her adverse credibility determination, (d) failed to accord controlling weight to the opinion of Plaintiff's treating sources, (e) did not properly assess Plaintiff's residual functional capacity, and (f) did not utilize the specific limitations established in the record for the hypothetical questions.  The Court will address each of her assertions in turn.

A.  <u>The ALJ's Findings at Step Two of the Sequential Evaluation Process are Supported by Substantial Evidence</u>.

Plaintiff contends that the ALJ did not properly implement step two of the five-step evaluation process and erred in finding that her upper extremity impairments were non-severe, having no more than a "*de minimis* effect on [her] ability to perform basic work activities, and to perform substantial gainful activity on a sustained basis." Tr. 21.  As established above, the ALJ makes a determination whether the claimant has a medically severe impairment of a combination

of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is deemed to be non-severe if "it does not significantly limit your physical or mental ability to do basic work activities." 202 C.F.R. 404.1521(a). "[A] finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28. "Basic work activities" encompasses the ability and aptitude to perform jobs that include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking, being able to carry out and remember simple instructions, good use of judgment, responding to supervisors, co-workers, and day-to-day work situations, and dealing with changes in the routine of a work setting. 20 C.F.R. 404.1521(b)(1-6). The claimant bears the burden of showing whether an impairment is severe or not. *Bowen*, 482 U.S. at 146, n. 5.

It is this standard that the ALJ applied and a review of the record supports the ALJ's findings regarding Plaintiff's severe and non-severe impairments. As noted, the ALJ found that there was evidence of record showing that Plaintiff had Hepatitis C, residuals from knee surgery, mild cervical degenerative disc disease, and depression, all of which qualified as "severe" impairments imposing limitations on Plaintiff's ability to do basic work. The ALJ however, found that Plaintiff's other reported impairments, reduced index finger flexion, arm and back pain, and the status, post-palm surgery, were "non-severe."

On July 29, 2005, an x-ray of the thoracic spine revealed mild levoscoliosis with the bony and normal soft tissue shadows. Tr. 129. In May of 2006, Plaintiff presented at the Barclay Rehabilitation Center ("BRC") with a complaint of neck pain, tightness, and bilateral wrist and forearm pain. Tr. 211. Although Plaintiff submitted the "self-report" questionnaire for the

DASH (Disabilities of the Arm, Shoulder and Hand) Outcomes Survey stating that she had a perceived disability rating of 55% in both upper extremities, the BRC report indicated that Plaintiff's sensation in her upper extremities was intact and she retained strength at grades 5/5. *Id.* Plaintiff had testified that the grip in her left hand was affected due to palm surgery and she had difficulty using her right forearm and suffers from pain when writing, grabbing, and lifting. Tr. 330-331. She also testified that the pain in her left arm and right hand resulted from a stabbing incident that had occurred fifteen years earlier. *Id.* Despite Plaintiff's testimony, the ALJ found that there was no evidence in the record confirming the injuries or establishing the severity of the conditions. Tr. 21, 331. See also SSR 96-4P, 1996 WL 374187 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.") Moreover, Plaintiff continued to work consistently after the stabbing incident. Tr. 21.

The ALJ did not consider the March 2007 statement submitted by one of Plaintiff's treating sources, Dr. DeJesus, as the evaluation took place well after the relevant dates of last insurance. The ALJ did consider Plaintiff's ability to perform certain tasks requiring the use of her upper extremities and noted that she was to able take care of her personal needs, take out the trash, clean, tie her shoes, prepare food, use touch tone phones and remote controls, eat with utensils, and swim. Tr. 21, 94. Thus, the Court finds that there was substantial evidence supporting the ALJ's finding that Plaintiff's other reported impairments (reduced index finger flexion, arm and back pain, and status post-palm surgery) were non-severe.

B.    The ALJ's Findings at Step Three of the Sequential Evaluation Process are
      Supported by Substantial Evidence.

Plaintiff next alleges that the ALJ erred at step three of the sequential evaluation process

when she concluded that her impairments did not meet any of the listings.  Once again, the ALJ's

conclusions are supported by the evidence in the record.  The ALJ reviewed the record and

Plaintiff's testimony and found that Plaintiff did not meet or equal any of the criteria in Listing

1.00 Musculoskeletal System, 5.00 Digestive System, or 12.00 Mental Disorders.

The ALJ found that Plaintiff did not specifically meet the criteria of Listing 1.02A (Major

dysfunction of a joint(s)) or 1.03(Reconstructive surgery or surgical arthrodesis of a major

weight- bearing joint).  The ALJ noted that "no treating or examining physician had mentioned

findings equivalent in severity to the criteria of any listed impairment."  Tr. 21.  Listing 1.00

defines loss of function as the showing of an "inability to ambulate effectively on a sustained

basis for any reason or . . . perform fine and gross movements . . . [that] effectively must have

lasted, or be expected to last, for at least 12 months."  Listing 1.00B(1-2) further elaborates on

specific activities that define the inability to perform effective ambulation, namely:

> "extreme limitation of the ability to walk . . . the inability to walk without the
> use of a walker, two crutches or two canes, the inability to walk a block at a
> reasonable pace on rough or uneven surfaces, the inability to use standard
> public transportation, the inability to carry out routine ambulatory activities,
> such as shopping and banking, and the inability to climb a few steps at a
> reasonable pace with the use of a single hand rail [with the] ability to walk
> independently about one's home without the use of assistive devices . . . not . . .
> constitut[ing] effective ambulation."

Listing 1.00B2c states:

> the "[i]nability to perform fine and gross movements effectively means an
> extreme loss of function of both upper extremities;  i.e., an impairment(s) that

interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities . . . [including] the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level."

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531-532 (1990) (emphasis in original). See also *Petition of Sullivan*, 904 F.2d 826, 839 (3d Cir. 1990). Plaintiff failed in this regard. The ALJ found that Plaintiff did not meet either Listing 1.02 or 1.03 because the record established that she was able to ambulate effectively. Tr. 21. Plaintiff stated that she was able to walk several blocks before having to stop. Tr. 92. Although she had arthroscopic surgery on September 13, 2006, to repair a torn meniscus, Plaintiff had improved to the point of not needing crutches by September 20, 2006. Tr. 277. Furthermore, Plaintiff is able to tend to her personal needs (bathing, washing, dressing, shaving), prepare meals, go shopping, swim, and go to movies and parties. Tr. 93-94. Plaintiff's assertion that she met Listing 1.04 (Disorders of the Spine) is also unfounded as the record shows that Plaintiff had normal muscle strength and sensation. Tr. 198, 206, and 211. Moreover, there was no evidence in the record that the degenerative change noted in her cervical spine (characterized as "mild" and "age appropriate") resulted in nerve root compression, motor loss, atrophy, or sensory and reflex loss as mandated in Listing 1.04. Tr. 215.

The Court notes that despite Plaintiff's contention that she met the criteria for Listing 5.05 (Chronic Liver Disease), she made no attempts to cite to any evidence in the medical record to support her claim. The ALJ found that even though Plaintiff had hepatitis C, Plaintiff did not

meet the criteria mandated by Listing 5.05. The ALJ reviewed the record and found that there was no showing "that [Plaintiff] ha[d] chronic liver disease involving esophageal varices with a documented history of massive hemorrhage attributable to these varices; or a shunt operation for esophageal varices." Tr. 21. There was no evidence in the record establishing a "serum bilirubin of 2.5 mg. per deciliter or greater persisting on repeated examinations for at least five months; or ascites not attributable to other causes recurrent or persisting for at least five months with abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter or less; or hepatic encephalopthy as evaluated under Listing 12.02; or confirmation of chronic liver disease by liver biopsy." *Id.*

Plaintiff also did not meet Listings 12.04 (Affective Disorders) or 12.06 (Anxiety Related Disorders). The ALJ found that Plaintiff was not able to satisfy at least two of the requirements in Appendix 1, Subpart P, Regulations No. 4 of 20 C.F.R., Part 404 which are marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, concentration, persistence, and pace, and repeated episodes of decompensation, each of extended duration. Tr. 23. Plaintiff had moderate limitations in social functioning as she was diagnosed with paranoia and suspiciousness. *Id.* and Tr. 163-165. Plaintiff did testify that she suffered from panic attacks and had to withdraw to her room two to three hours at a time. Tr. 23. She also testified that she is socially active, she has friends, and had no difficulty in interacting with her representative or those present in the hearing room. *Id.* The ALJ observed that Plaintiff did not exhibit any "inappropriate social behavior throughout the course of the hearing." *Id.* Examinations by mental health experts showed that Plaintiff had normal intelligence and normal memory. *Id.* and Tr. 184-195. Although testifying that she had trouble concentrating, Plaintiff

also stated that she was able to watch television, movies, listen to the radio, play games, and pay her bills. Tr. 24. The ALJ found these activities to be in line with an individual who is able to perform simple, routine, repetitive job tasks. *Id*. There was no evidence in the record to show that Plaintiff had any experiences of decompensation. *Id.* The ALJ also found no evidence to show that she has had a "current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.* The fact that examinations showed that Plaintiff did not experience any fatigue, delusions, hallucinations, feelings of worthlessness, and that she had fair insight, also support the ALJ's findings that Plaintiff did not meet the above listings. *Id.* and Tr. 184-195, 205-207, 243-254. Thus, the Court finds that there was substantial evidence supporting the ALJ's finding that Plaintiff did not meet or equal any of the criteria in Listing 1.00 Musculoskeletal System, 5.00 Digestive System, or 12.00 Mental Disorders.

      C.    <u>The ALJ's Adverse Credibility Determination was not Improper</u>.

      Plaintiff asserts that the ALJ failed to consider her subjective complaints of pain. Pain, however, is not conclusive as evidence of disability. There must also be the presence of objective medical evidence, such as medical test results and findings and physical abnormalities that could produce pain. In cases where the claimant's subjective pain is supported by objective medical evidence, that the claimant's complaints should be afforded weight. See *Chrupcala*, 1275. However, even in cases where there is no objective medical evidence to support claimant's complaint of pain, the complaints are still to be seriously considered. *Bailey v. Apfel*, 1998 WL 401629, at *6 (E.D.Pa. 1998) (internal citations omitted). Furthermore, an ALJ is permitted to determine that a claimant's testimony regarding his or her impairments is less than

credible if there are inconsistencies in the claimant's testimony or daily activities. *Burns v.*

*Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002). "Limitations that are medically supported but

are also contradicted by other evidence in the record may or may not be found credible-the ALJ

can choose to credit portions of the existing evidence." *Rutherford*, 399 F.3d at 554.

During the hearing, Plaintiff testified that she is able to lift five to ten pounds with both

hands, can stand for an hour, and sit for one and a half hour. Tr. 331-332. She also testified that

the grip in her left hand was affected by the palm surgery she had and she was receiving therapy

for the right knee surgery she had on June 2, 2006 . Tr. 331 and 335. She suffers from panic

attacks and has to withdraw to her room two to three times a day for about two to three hours.

Tr. 333. She also testified that she had been seeing Dr. Donald P. Breneman (hereinafter

"Breneman"), her psychiatrist, for her depression for about two years, her medications included

Lexapro, Risperdol, and Vicodin, and she attended individual counseling sessions every month or

two months. Tr. 328, 339. She also stated that she would soon begin taking medication for

Hepatitis C. *Id.*

The ALJ considered Plaintiff's statements regarding her pain and the record evidence and

found there was no objective medical evidence to support her complaints of pain. Plaintiff

testified that the reason she stopped working was due to conflicts with co-workers and not

because of her symptoms and indeed she continued to look for work after that point as noted in a

report on July 21, 2005 by the West Moreland Gastroenterology Associates ("WMGA") where

she was receiving treatment. Tr. 198. The ALJ noted that contrary to her testimony, Plaintiff had

stated in her application that she could lift up to twenty pounds, stand for more than sixty

minutes, walk more than several blocks, and sit for more than thirty minutes. Tr. 23, 90-99.

Furthermore, Plaintiff's exhibited moments of inaction and non-cooperation regarding her treatment regime came to the fore at different points in time. On April 8, 2005, Dr. Douglas E. Klions (hereinafter "Klions"), a specialist in Gastroenterology and Hepatology, noted that although he considered Plaintiff a good candidate for treatment for Hepatitis, Plaintiff had continued to drink alcohol despite admonitions to the contrary. Tr. 22, 125. Plaintiff also had missed her monthly visits to his office and refused to pick up her medications or move forward with the recommended one year of treatment for the Hepatitis. *Id.* On January 17, 2006, the WMGA reported that Plaintiff's depression was stable and she was doing well in regards to her Hepatitis but had consumed alcohol during the previous Christmas holidays. Tr. 206. Again, on May 18, 2006, the WMGA noted in a report to Dr. Breneman that Plaintiff had consumed alcohol on Mother's Day, 2006 and was strongly cautioned against it. Tr. 205. In June 2006, Plaintiff continued to engage in the same non-cooperative behavior. Plaintiff's treating source, Dr. Breneman, called Dr. DeJesus' office to discuss Plaintiff's Hepatitis treatment and described Plaintiff as a "very neurotic complaining person" who was prone to missing appointments. Tr. 226. Breneman had not seen her since April and she had cancelled her last appointment on June 6, 2006. *Id.* Her appointment was to be re-scheduled for June 26, 2006 but he indicated some doubts as to Plaintiff showing up for the appointment. *Id.* He also described Plaintiff as a "non-compliant patient and she's very hard to get [sic] hold of." *Id.* Plaintiff did see Dr. Breneman on June 26, 2006, and he noted in correspondence with Dr. DeJesus that Plaintiff "is not particularly motivated to examine her behaviour [sic] . . . [and] [i]n the past . . . had a pattern of drinking heavily and apparently still drinks to some extent despite her knowledge that she has Hepatitis." Tr. 258. In his progress report regarding Plaintiff's June 26, 2006 visit, Dr. Breneman noted that

Plaintiff would need education on the "importance of sobriety." Tr. 245. The record establishes that Plaintiff did not have any neurologic or motor deficits, she had clear lungs and normal peripheral pulses, and there were no signs of a murmur or edema. Tr. 23. Thus, the Court finds that the ALJ's discounting of Plaintiff's credibility was properly founded and supported by the evidence of record.

      D.    <u>The ALJ Accorded Plaintiff's Treating Sources' Opinions Proper Weight</u>.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)). . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, quoting Plummer, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ must "explicitly" weigh all relevant, probative and available evidence, must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition, and may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects. *Adorno*, 40 F.3d at 48 (emphasis added; citations omitted).

See also *Fargnoli*, 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. Compare 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) with 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002). Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner, these Social Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the

opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

In the instant matter, the ALJ did consider and address the record including the medical opinions of Plaintiff's treating sources, Dr. Breneman and Dr. DeJesus (hereinafter "DeJesus") as well as the findings of Dr. Salvatore Cullari (hereinafter "Cullari"), the state agency mental health consultant. On July 18, 2005, Plaintiff presented with feelings of depression and unhappiness. Tr. 186. Dr. Breneman stated that Plaintiff had a Global Assessment of Functioning ("GAF") of 25-50 on that same day. Tr. 24. Dr. Breneman reported that Plaintiff was alert with her memory intact. *Id.* Plaintiff did not harbor any thoughts of harm to herself or to others. *Id.* Her speech was adequately modulated, her insight was fair with "sufficient judgment to make realistic plans for the future", and intelligence was within normal limits. *Id.* Dr. Breneman also noted that while Plaintiff's prognosis was still guarded, she had begun working as a dishwasher and had moved into her own apartment after living with a friend for a long time. *Id.* Dr. Breneman encouraged Plaintiff to continue working as she found the experience to be gratifying. *Id.* On August 9, 2005, Dr. Breneman reported to the Pennsylvania

Department of Public Welfare that Plaintiff suffered from major depression and would be unable to engage in gainful employment due to temporary disability from February 11, 2004 to February 11, 2006. Tr. 163.

Dr. DeJesus completed an undated form stating that Plaintiff could perform light, exertional activity with the occasional climbing, crouching, kneeling, squatting. Tr. 283-284. He also opined that Plaintiff should only be in environments with occasional exposure to extreme cold, heat, or concentrated exposure to water and liquids. *Id.* On March 6, 2007, Dr. DeJesus submitted a medical statement reporting that Plaintiff could not work any hours during the day, she could not stand at any one time (not even during the workday), and she did not have the ability to lift occasionally or on a frequent basis. Tr. 304.

These medical opinions are to be accorded substantial weight, but not to any special significance, because they are on matters reserved to the Commissioner. A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, citing *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The ALJ found that the opinions of her treating physicians were contradicted by objective medical evidence of record. On September 21, 2005, Dr. Mary Berkebile (hereinafter "Berkebile") reported that Plaintiff had undergone a liver biopsy in March 2005 which revealed

that Plaintiff had Hepatitis C.  Tr. 197.  Dr. Berkebile noted that the liver inflammation was

minimal and recommended that Plaintiff wait for the Hepatitis treatment but continue with her

depression therapy.  *Id.*  Dr. Berkebile reported on March 29, 2006, that Plaintiff still continued

to experience musculoskeletal neck and shoulder pain and examinations revealed tenderness and

spasm in the neck paravertebral muscles with a decreased range of motion.  Tr. 221

Examinations of Plaintiff's shoulder revealed it to be in a benign state.  *Id.*  On April 17, 2006,

Plaintiff's cervical compression and distraction test and the medial and lateral epicondylitis test

on the right upper extremity were negative.  Tr. 232.  Dr. Berkebile noted that her upper

extremity strength was 5/5 throughout although Plaintiff presented with impaired Jamar grip

strength bilaterally.  *Id.*  On April 27, 2006, Dr. Berkebile noted that Plaintiff was still suffering

from intermittent right dorsal wrist pain which was reduced to the 1-2/10 range with medication

although she was experiencing less episodes of cervical pain and she ranked her pain as 3/10

with medication.  Tr. 230.

The ALJ examined Dr. Breneman's July 18, 2005 report in which Plaintiff had a GAF of

45-50.  She discounted Dr. Breneman's opinion in this regard as the GAF "is a subjective scale

used to consider social, occupational, or school functioning on a hypothetical continuum and is

only reflective of an individual's level of functioning at that particular time."  Tr. 24.  The ALJ

found these results to be contrary to Dr. Breneman's report that Plaintiff was still working at the

time as a dishwasher.  *Id.*  The ALJ noted that Dr. Breneman did not give any explanation as to

his conclusion in the August 9, 2005 report stating that Plaintiff would be temporarily disabled

for a two-year period.  Tr. 25.  Indeed, Dr. Breneman had encouraged Plaintiff to continue

working as a dishwasher and he had reported that Plaintiff had normal intelligence, fair insight,

intact memory, full orientation, and no auditory hallucinations. *Id.* Furthermore, the report submitted was a state welfare form which the ALJ cautioned on its relevancy as the standard of disability with the state welfare office is less restrictive than the standards applied for social security disability determination. *Id.* The ALJ also considered Dr. DeJesus undated report and noted that he did not provide an explanation for his opinion regarding Plaintiff's environmental limitations. *Id.* The ALJ did not consider Dr. DeJesus' March 6, 2007 opinion as it was submitted two months after the ALJ's decision and it was outside of the relevant period at issue.

Plaintiff testified that the reason she left her last place of employment was because she had problems with her co-workers. Tr. 21 and 326. She also testified that she continued to look for jobs including such places as convenience stores but opined that she was having trouble getting hired due to the Hepatitis. Tr. 327. The Court finds that the ALJ considered all of the relevant evidence and also provided reasons for not placing substantial weight of the opinions of Plaintiff's treating sources.

      E.      <u>The ALJ Correctly Assessed Plaintiff's Residual Functional Capacity</u>.

Plaintiff contends that the ALJ did not properly assess her residual functional capacity and did not utilize the specific limitations established in the record for the hypothetical questions. The ALJ considered Plaintiff's activities of daily living and noted that Plaintiff could wash dishes, tend to her personal needs, use a small vacuum cleaner, dust, use public transportation, do the laundry with help, and prepare meals. Tr. 23 and 90-95. Plaintiff also did her grocery shopping with help and saw movies with her friends. *Id.* The ALJ noted that the record established normal peripheral pulses, clear lungs, and a lack of motor or neurological deficit. *Id.* Plaintiff also reported being able to play games, pay her bills, watch television and read the

newspaper.  Tr. 24.  An x-ray of the thoracic spine on July 29, 2005, revealed mild levoscoliosis with normal bony and soft tissue shadows.  Tr. 129. Physical examinations showed that she was neurologically intact with normal motor strength and sensation.  Tr. 198, 205-207.  Examinations by mental health examiners did not reveal any signs of delusions, fatigue, hallucinations, loss of interest in activities, suicidal thoughts, and feelings of worthlessness.  *Id.*

The ALJ had accorded some weight to the opinion of state agency mental health expert, Dr. Cullari.  Tr. 25.  On October 17, 2005, Dr. Cullari concluded that Plaintiff had mild limitations with her activities of daily living, moderate limitations in maintaining social functions, concentration, persistence, or pace and no limitations regarding decompensation.  Tr. 176.  Dr. Cullari also noted that Plaintiff did not have any significant limitations in her ability to ask simple questions, request assistance, get along with co-workers or peers without exhibiting extreme behavioral extremes, travel in unfamiliar places or use public transportation, interact with the general public, and be aware of normal hazards while taking appropriate precautions.  Tr. 180.  He found that Plaintiff had moderate limitations regarding her ability to complete a normal workday and workweek without interruptions, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others.  *Id.*  Overall, Dr. Cullari concluded that Plaintiff's ability to understand and remember complex instructions was limited but she would be able to perform simple, routine, repetitive work in a stable environment.  Plaintiff would be able to sustain an ordinary routine without supervision and meet the basic mental demands of competitive work on a sustained basis.  Tr. 181.

The ALJ concluded that Plaintiff had the RFC to perform light work with the occasional

postural maneuvers such as kneeling, stooping, balancing, crouching, climbing, and crawling. Tr. 27. Plaintiff would also be limited to simple, routine, repetitive tasks with the occasional interaction with supervisors, co-workers, and the general public. *Id.*

A "hypothetical question must *reflect all of a claimant's impairments that are supported by the record*; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.") (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir.1984) and *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir.1983)). See *Chrupcala*, 829 F.2d at 1276 (emphasis added). The ALJ posed a hypothetical question to the vocational expert, Dr. Mitchell Schmidt (hereinafter "Schmidt"), and inquired into whether a person of Plaintiff's age, education, and work experience with the limitations described above would be able to work in a profession in the regional or national economy that allowed for such limitations. Tr. 347-348. Dr. Schmidt testified about Plaintiff's relevant past work. He stated that Plaintiff had worked as a dishwasher and prep cook (both also referred to as kitchen helper) which were medium, unskilled positions and as a housekeeper (also called a cleaning person) which was also at the medium, unskilled level. Tr. 347. The vocational expert stated that none of the positions involved any transferrable skills. *Id.* Due to her functional limitations, Plaintiff would not be able to perform any of her past jobs and would have to do other unskilled, light work. Tr. 248. Dr. Schmidt also testified that Plaintiff could work as a shipping and receiving weigher (of which there 700 jobs regionally and 490,000 jobs nationally), a garment sorter (of which there are 2,300 regionally and 1.4 million nationally), and a routing clerk (of which there are 1,250 regionally and 780,000 nationally). *Id.*

The ALJ also asked the vocational expert about other jobs that Plaintiff could perform

while limited to sedentary work but with the same non-exertional limitations as discussed above (unskilled, light work). The vocational expert stated that Plaintiff would be able to work as a printed circuit layout taper (200 jobs regionally, 140,000 nationally) and a weight tester (1650 jobs regionally, 320,000 nationally). Tr. 346-347. The Court finds that the ALJ's hypothetical question did incorporate of all Plaintiff's impairments as they were supported by the record.

## VI.     Conclusion

The Court has reviewed the ALJ's findings of fact and decision, and determines that her finding that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence. Accordingly, the Court will grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's, and enter judgment in favor of the Commissioner.


An appropriate order will follow.


_____     /s/ Arthur J. Schwab____
                                            Arthur J. Schwab
                                            United States District Judge


cc:     All counsel of record listed on ECF